2004 WY 45

**Delroy M. GRANT, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 02–217.

Supreme Court of Wyoming.

April 27, 2004.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel, Cheyenne, Wyoming. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Daniel M. Fetsco, Assistant Attorney General, Cheyenne, Wyoming. Argument by Mr. Fetsco.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Delroy M. Grant (appellant) entered a conditional plea of no contest to a charge of felony possession of marijuana, reserving the right to appeal the district court's denial of his motion to suppress evidence seized during a traffic stop on Interstate 80 in Laramie County. Appellant claims he was illegally seized when a highway patrol officer ordered appellant, a passenger in and owner of the vehicle stopped, to exit the vehicle during the stop. Appellant also claims he did not consent to the search of his vehicle and, even if he did, the consent was not voluntary. We affirm.

### ISSUE

[¶ 2] Appellant and the State agree. on one issue:

Whether the trial court erred in failing to suppress the evidence obtained from the illegal seizure of appellant's person and search of appellant's vehicle?

### FACTS .

[¶ 3] At 3:44 p.m. on December 20, 2001, Wyoming Highway Patrol Trooper Benjamin Peech stopped an eastbound van on Interstate 80 in Laramie County for speeding 91 in a 75 mile per hour zone. The van bore expired Wisconsin license plates and a Minnesota temporary registration. The van was driven by Miles Warren. Appellant, the owner of the van, was a passenger in the van at the time of the stop. Claudia Brown, appellant's sister, occupied the front passenger seat.

[¶ 4] Upon approaching the van, Trooper Peech asked Warren for his driver's license, for proof of insurance, and for the vehicle registration. After Warren handed over some paperwork, Trooper Peech asked Warren to come back to the patrol car while the trooper issued a speeding citation. A close examination of Warren's Minnesota driver's license revealed that the license had been altered: the top right hand corner had been cut off. Trooper Peech testified that, in his experience, such an alteration of a driver's license might indicate that the license had been voided. Trooper Peech further testified that the National Law Enforcement Telecommunication System was not working that day, so he asked dispatch to contact the Minnesota State Patrol to check the status of Warren's driver's license. Trooper Peech also reviewed the paperwork that indicated appellant was the owner of the van. Within ten minutes of making the traffic stop, Trooper Peech called for the canine patrol unit.

[¶ 5] While waiting for a response from dispatch regarding the status of Warren's Minnesota driver's license, Trooper Peech walked back to the van to speak with appellant. The trooper wanted to confirm the owner of the vehicle was, in fact, appellant and that appellant was in the· vehicle. Trooper Peech asked appellant to step out of the vehicle, and appellant did so. Appellant confirmed he was the owner of the vehicle

and handed the trooper a Minnesota driver's license. As the trooper verified the driver's license against the vehicle paperwork, the trooper spoke with appellant about the group's travel itinerary. Upon completing that conversation, appellant stepped back into the van. Trooper Peech then spoke with the female passenger, Ms. Brown. After completing that conversation, Trooper Peech returned to his patrol car.

[¶ 6] At 4:06 p.m., dispatch informed Trooper Peech that Warren's driver's license had been revoked. Trooper Peech then explained to Warren he would be cited for driving under suspension. As Trooper Peech was completing the process of issuing a citation to Warren, Trooper David Chatfield arrived with his canine unit at 4:11 p.m.

[¶ 7] Trooper Chatfield approached the van, asked appellant and Ms. Brown to step out of the van, and advised them that he was going to have his dog perform a sniff of the perimeter of the vehicle. According to Trooper Chatfield's testimony, as the two passengers (appellant and Ms. Brown) stepped out of the van, they stated that Chatfield could "go ahead and search the whole vehicle if you want." Trooper Chatfield subsequently confirmed appellant was the owner of the van, and, according to Chatfield, appellant consented to Chatfield and his dog entering the vehicle. Trooper Chatfield testified that appellant volunteered his consent before Chatfield asked for the same.

[¶ 8] After leading the dog around the van twice, Trooper Chatfield allowed the dog to enter the van through the front passenger door. When the dog entered the van, Trooper Chatfield tried to open the van's sliding side door to observe the dog. When the trooper was unable to open the door, appellant assisted in opening it. The drug dog subsequently twice "alerted," indicating there were drugs in the van. Trooper Chatfield then informed the occupants that the dog had alerted and that Trooper Chatfield was going to search the van. Trooper Peech joined the search, and the officers discovered marijuana in the frame rails of the van. The vehicle was then impounded, and law enforcement eventually seized forty-two pounds of marijuana from the van.

[¶ 9] Appellant was initially charged with two crimes: possession of marijuana with intent to deliver and conspiracy to possess marijuana with intent to deliver. After the public defender was appointed to represent appellant, he filed a motion to suppress the marijuana. The district court held a hearing and later denied appellant's motion. Thereafter, pursuant to a plea agreement, appellant pled no contest to one count of felony possession of marijuana. In accord with W.R.Cr.P. 11(a)(2), appellant reserved the right to appeal the denial of the motion to suppress. The district court sentenced appellant to two to five years in prison.

## STANDARD OF REVIEW

 [¶ 10] Our standard of review is:

Findings on factual issues made by the district court considering a motion to suppress are not disturbed on appeal unless they are clearly erroneous. *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994). Since the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions, evidence is viewed in the light most favorable to the district court's determination. *Id.* The issue of law, whether an unreasonable search or seizure has occurred in violation of constitutional rights, is reviewed de novo. *Id.; Brown v. State*, 944 P.2d 1168, 1170–71 (Wyo.1997).

*McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999).

## DISCUSSION

[¶ 11] Appellant divides his one issue into three distinct arguments. First, he contends Trooper Peech had no reason to require appellant to exit the vehicle and the trooper therefore illegally seized appellant. Second, appellant asserts he did not give consent to search the van. Finally, appellant contends that, even if he did consent to the search of the van, such consent was not given voluntarily.

## A. Requiring Appellant to Exit the Vehicle

[¶ 12] Appellant argues that Trooper Peech committed an unlawful seizure when he ordered appellant to exit the van for questioning.[1] Appellant contends that Trooper Peech was required to have either a reasonable suspicion of criminal activity or an articulable officer safety justification before he could order appellant, a passenger, to exit the vehicle. The State responds that the law does not require such a reasonable suspicion and that, when Trooper Peech questioned appellant, the trooper was acting reasonably in confirming ownership of the van. We reject appellant's argument.

[¶ 13] In *Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 333 n. 6, 54 L.Ed.2d 331 (1977), the United States Supreme Court held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." In *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), the Court was presented with the question whether the rule from *Pennsylvania v. Mimms* should be extended to passengers as well. After finding that "the same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger," *id.* at 413, 117 S.Ct. at 885, the Court held that the rule of *Pennsylvania v. Mimms* should be extended to passengers. *Id.* at 415, 117 S.Ct. at 886. *See Fender v. State,* 2003 WY 96, ¶ 16, 74 P.3d 1220, ¶ 16 (Wyo.2003) ("An 'officer making a traffic stop may order passengers to get out of the car pending completion of the stop.' *Maryland v. Wilson,* 519 U.S. 408, 415, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997)"); *see also Houghton v. State,* 956 P.2d 363, 372 (Wyo. 1998), *rev'd,* 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999) (Golden, J., dissenting) ("It is reasonable for a law officer as a matter of course to order the passengers of a lawfully stopped motor vehicle to exit the vehicle. *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)").

[¶ 14] While appellant acknowledges *Maryland v. Wilson,* he contends its reasoning requires that, before an officer can lawfully order a passenger to exit a vehicle, the officer must have either a reasonable suspicion the passenger was involved in some criminal activity or the officer must have an articulable officer safety justification. Building on that interpretation, appellant asserts that Trooper Peech had neither of the prerequisites and, therefore, the trooper illegally seized appellant when the trooper ordered appellant out of the van to conduct what appellant characterizes as a "fishing expedition."

[¶ 15] First, contrary to appellant's characterization, Trooper Peech, in questioning appellant, was confirming ownership of the van. In fact, the district court indicated that, under the circumstances (some question about vehicle ownership), appellant's rights were not violated when the trooper questioned appellant in order to "verify the vehicle." Appellant makes no specific challenge on this issue, nor does he provides us with authority suggesting that Trooper Peech acted unlawfully in questioning appellant about vehicle ownership. *See Burgos–Seberos v. State,* 969 P.2d 1131, 1133 (Wyo.1998) ("Generally, the driver must be allowed to proceed without further delay once the officer determines that the driver has a valid license and is entitled to operate the vehicle.") Therefore, without a specific challenge supported by authority, we will not discuss this issue further.

[¶ 16] Second, our close reading of *Maryland v. Wilson* leads us to the conclusion that the Supreme Court established a bright line rule that allows an officer, during a lawful traffic stop, to order passengers out of a vehicle as a matter of course. In a footnote in the majority opinion, Chief Justice Rehnquist wrote:

> limited to federal constitutional principles. *Wilson,* 874 P.2d at 219; *Vasquez v. State,* 990 P.2d 476, 484 (Wyo.1999); *Fender v. State,* 2003 WY 96, ¶ 12, 74 P.3d 1220, ¶ 12 (Wyo.2003).

---

1. Appellant makes no claim that the Wyoming Constitution affords him more protection in this, or any other, particular area of search and seizure jurisprudence. Therefore, our discussion is

Respondent argues that, because we have generally eschewed bright-line rules in the Fourth Amendment context ..., we should not here conclude that passengers may constitutionally be ordered out of lawfully stopped vehicles. But, that we typically avoid *per se* rules concerning searches and seizures does not mean that we have always done so; *Mimms* itself drew a bright line, and we believe the principles that underlay that decision apply to passengers as well.

*Maryland v. Wilson,* 519 U.S. at 413 n. 1, 117 S.Ct. at 885 n. 1. To further support the proposition that *Maryland v. Wilson* established a bright line rule, one need only look at the dissenting opinions from Justices Stevens and Kennedy. In those opinions, both justices challenged the bright line rule approach taken by the majority, an approach that, as stated by Justice Stevens, "applies equally to traffic stops in which there is not even a scintilla of evidence of any potential risk to the police officer." *Id.* at 416, 117 S.Ct. at 887. In addition, it should be noted that the Tenth Circuit Court of Appeals has interpreted *Maryland v. Wilson* to encompass a bright line rule that does not require a particularized suspicion of danger to the officer. *United States v. Holt,* 264 F.3d 1215, 1222 (10th Cir.2001) ("An officer also may order the driver and passengers out of the vehicle in the interest of officer safety, even in the absence of any particularized suspicion of personal danger. *Maryland v. Wilson,* 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)."). We thus conclude that appellant's constitutional rights were not violated when Trooper Peech ordered appellant to exit the van.

**B. Consent to Search**

■ [¶ 17] Appellant also claims he did not give his consent to Trooper Chatfield to search his vehicle. Alternatively, he argues that, even if he did give consent, the consent was not voluntary. We reject both contentions.

■ [¶ 18] "The existence and voluntariness of a consent to search is a question of fact to be decided by the trial judge in the light of all attendant circumstances."

*Stamper v. State,* 662 P.2d 82, 87 (Wyo.1983); *Parkhurst v. State,* 628 P.2d 1369, 1378 (Wyo.1981); *Mares v. State,* 500 P.2d 530, 534 n. 1 (Wyo.1972). At the district court's hearing on the motion to suppress, Trooper Chatfield testified that appellant consented to the search. Appellant also testified at that hearing, and he denied having consented to the search. In addition to hearing this testimony, the district court reviewed the videotape from two highway patrol units. Although the videotape did not include audio of the conversation between Trooper Chatfield, appellant, and Ms. Brown, it did capture appellant assisting Trooper Chatfield in opening the van's sliding door. After a review of the testimony and the video, the district court made its finding on the record that "the circumstantial evidence supports Officer Chatfield's evidence and testimony that there was actual consent, and I so find."

[¶ 19] Appellant contends the district court's ruling is erroneous. He first points out that the district court made no finding that appellant was not credible. Appellant next asserts that the only articulated evidence for accepting the trooper's word over appellant's was the fact that appellant assisted in opening of the van door. Because appellant opened the van door after the dog was already in the vehicle, appellant claims his assistance was of no moment in determining whether there was actual consent. In sum, appellant contends the district court simply sided with law enforcement.

[¶ 20] In analyzing appellant's argument, we must view the evidence in the light most favorable to the district court's determination. Here, given Trooper Chatfield's testimony, there is obviously sufficient evidence to support the district court's determination. As for the argument that the opening of the van door is irrelevant, we disagree. The district court was free to find this to be circumstantial evidence, under the totality of the circumstances, to support the trooper's testimony. While it is true, according to Trooper Chatfield, that appellant had already given his consent to search when he assisted with the van door, the district court could rely on that assistance in determining whether there was actual consent. In other words,

the district court was free to believe that, if appellant had in fact consented to the search, it would be more likely that appellant would assist Trooper Chatfield with the search by opening the door. We find no clear error in the district court's determination that appellant gave his consent to search the vehicle.

[¶ 21] Appellant also argues that his *consent was not voluntarily given. He points* to the following: (1) it was a cold and windy day, appellant was ordered out of the van twice, and he was wearing only jeans and a t-shirt; (2) appellant did not believe he could refuse the troopers' requests; and (3) he did not believe he was free to leave or walk away.

[¶ 22] In reviewing this issue, we have applied the following standards:

In determining whether a warrantless search was justified by a valid consent, we inquire "into the 'voluntariness' of the consent in light of 'the totality of the circumstances' " of the particular case. *Amin v. State*, 695 P.2d 1021, 1024 (Wyo.1985). *See also [United States v.] Elliott*, 107 F.3d [810] at 813–14 [ (10th Cir.1997)]. Some of the factors that a court may consider in determining whether the consent was voluntary include: the way the law enforcement officer phrased the request for permission to search; whether the officer told the individual that he could refuse the request; and the presence of other coercive factors. *Stamper v. State*, 662 P.2d 82, 87 (Wyo.1983). We must consider all the circumstances surrounding the encounter to determine whether a reasonable person would have felt "free to decline the officers' requests or otherwise terminate the encounter." *[Florida v.] Bostick*, 501 U.S. [429] at 436, 111 S.Ct. 2382 [115 L.Ed.2d 389 (1991)]. *See also [United States v.] Sandoval*, 29 F.3d [537] at 540 [(10th Cir.1994)]. No single factor is determinative when we are ascertaining whether a seizure occurred. *Sandoval*, 29 F.3d at 540.

*Burgos–Seberos*, 969 P.2d at 1134. "The question of whether consent to search was voluntary is one of fact to be determined in light of all the circumstances." *Nixon v.*

*State*, 2001 WY 15, ¶ 16, 18 P.3d 631, ¶ 16 (Wyo.2001).

[¶ 23] Appellant emphasizes that he did not believe he could refuse any of the troopers' requests. However, "[w]hile knowledge of the right to refuse consent is one factor to be taken into account [in determining whether consent was voluntary], the government need not establish such knowledge as the *sine qua non* of an effective consent." *Parkhurst*, 628 P.2d at 1376–77 (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854, 859 (1973)). Moreover, in *Ohio v. Robinette*, 519 U.S..33, 39–40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996), the Supreme Court held that officers are not required to advise a lawfully detained motorist of the right to refuse to consent to an automobile search. *Vasquez v. State*, 990 P.2d 476, 482 n. 2 (Wyo.1999). Thus, appellant's lack of knowledge of his right to refuse to consent, although a factor to be considered, is not a controlling factor.

[¶ 24] After a review of the record, we will uphold the district court's finding that consent was voluntarily given. There are a number of factors that support the district court's finding. First, Trooper Chatfield testified that he never threatened appellant in any way and that appellant essentially volunteered consent. Second, it is clear that appellant was not handcuffed or otherwise restrained when he gave consent to the search. In addition, contrary to appellant's assertion, it appears from the videotape that appellant was wearing a winter jacket. It also appears from the videotape and from the officer's testimony that appellant was cooperative with the officers. Although the officers never informed appellant that he could refuse to consent to the search, that factor is not controlling. Regardless, even weighing that factor in appellant's favor, it cannot be said the district court erred in concluding that, under the totality of the circumstances, the consent was voluntarily given.

[¶ 25] Affirmed.