2007 WY 170

**Frank Eugene KELLER, Jr.,
Appellant (Defendant),**

**v.**

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. S–07–0085.

Supreme Court of Wyoming.

Oct. 30, 2007.

Representing Appellant: Kurt A. Infanger of The Nick Carter Law Firm, P.C., Gillette, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Paul

S. Rehurek, Senior Assistant Attorney General. Argument by Mr. Rehurek.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] The appellant pled guilty to felony possession of a controlled substance, methamphetamine, in violation of Wyo. Stat. Ann. § 35–7–1031(c)(ii) (LexisNexis 2007), reserving his right to appeal the district court's denial of his motion to suppress evidence.[1] We affirm because the investigative detention of the appellant did not violate either the Fourth Amendment to the United States Constitution or Article 1, § 4 of the Wyoming Constitution. Consequently, the district court did not err in denying the pretrial motion to suppress.

## ISSUE

[¶ 2] Did the investigative detention of the appellant prior to seizure of the evidence violate the Fourth Amendment to the United States Constitution, or Article 1, § 4 of the Wyoming Constitution?

## FACTS

[¶ 3] At about 8:00 p.m. on March 18, 2006, Deputy Dave Lauck of the Campbell County Sheriff's Office was on routine patrol on Interstate 90. He drove into an unlit "pullout" area known to local law enforcement officers as a place where underage drinking, drug usage, vandalism, and theft from vehicles frequently occurred. As he drove into the pullout area, Deputy Lauck saw a Chrysler PT Cruiser parked, with its headlights off, but its motor running. The headlights of his patrol vehicle briefly illuminated the interior of the PT Cruiser, and Deputy Lauck noticed a "flurry of movement" in the front seat area. Deputy Lauck parked his patrol vehicle and walked up to

the front passenger door of the PT Cruiser "to find out more about what was going on."

[¶ 4] The appellant was seated in the front passenger seat of the PT Cruiser, with the seat reclined at about a 45–degree angle. The reclined seat, combined with the tinted window, made it difficult for Deputy Lauck fully to see the appellant, which raised both officer safety and evidence destruction concerns in his mind. The appellant lowered the passenger window about halfway. As he asked the appellant "what was going on," Deputy Lauck noticed that the appellant appeared nervous, and he also noticed an "unusual" odor coming from inside the car. The odor, which Deputy Lauck alternatively described as "an old burnt smell," or a "chemical smell," made him suspect drug activity, despite the fact that he could not identify the odor as coming from any specific controlled substance with which he was familiar through his training and experience.[2]

[¶ 5] Deputy Lauck next obtained the driver's licenses of both the appellant and the driver, Cassie Gose. He returned to his patrol vehicle, where he ran local warrant and driver's license checks and called for backup and a K–9 unit.[3] Deputy Scott Appley arrived at the scene as backup within five to seven minutes after Deputy Lauck first approached the PT Cruiser. No K–9 unit responded.

[¶ 6] Deputy Lauck next walked from his vehicle to the driver's door of the PT Cruiser and asked the driver to step out. His purpose was to determine the source of the unusual odor, and in particular to see "if they were in the process of using controlled substances." He asked the driver if there were any drugs in the car and she indicated that there was "a pipe." She voluntarily retrieved a pipe and a small amount of marijuana from behind the driver's seat and gave it to Deputy Lauck. Deputy Lauck asked if he

---

1. W.R.Cr.P. 11(a)(2) allows entry of a conditional guilty plea, with reservation of the right to appeal the denial of a pretrial motion.

2. When asked, the appellant stated that the odor resulted from sexual activity, and when Deputy Lauck later approached the driver's door, he

noticed that the female driver was partially unclothed.

3. The record does not indicate the result of the warrants and driver's license checks, but we assume they were negative inasmuch as Deputy Lauck took no action in response thereto.

could search the car and the driver consented. She was then arrested.

[¶ 7] Before Deputy Lauck began to search the PT Cruiser, he had the appellant get out and stand near Deputy Appley. He then searched the car, finding marijuana seeds and stems, and a white pill in the passenger seat, as well as another pipe in the glove compartment. He also found a prescription bottle of hydrocodone tablets, in the driver's name, in a compartment in the passenger door.

[¶ 8] The appellant and Deputy Appley stood near the patrol vehicles while Deputy Lauck searched the PT Cruiser. The appellant was fidgety and was talking to himself, and began putting his hands in his pockets, which made Deputy Appley uncomfortable because he had not patted down the appellant for weapons. Consequently, Deputy Appley had the appellant empty his pockets, placing the contents onto the back of Deputy Lauck's patrol vehicle. Deputy Appley then patted down the appellant, finding no weapons.

[¶ 9] A few minutes later, the appellant asked Deputy Appley if the appellant could urinate. Deputy Appley directed the appellant to the back of the patrol vehicles. The appellant returned, and soon asked if he could sit down because he was cold. Deputy Appley told him to sit by the back tire of the patrol vehicle so the deputy could continue both to watch the appellant and to observe the car search, in his backup capacity. The appellant sat on the ground for a few minutes, but then asked if he could sit in the patrol vehicle. Deputy Appley assented and opened the door to allow the appellant to sit on the passenger seat. As he did so, Deputy Appley observed a baggie lying on the ground where the appellant had been seated.

[¶ 10] Deputy Appley picked up the baggie and asked the appellant what it was. The appellant denied that it belonged to him, and accused the deputy of "planting" it. At the same moment, Deputy Appley saw another baggie fall out of the appellant's pants leg onto the floor board of the patrol vehicle. Both baggies contained a white powder that Deputy Appley suspected to be, and that later was proven to be, methamphetamine.

The appellant was then arrested and transported to jail. Upon the appellant being searched for admission into the jail, another baggie of methamphetamine was found in the crotch area of his pants, and a small cellophane packet of marijuana was found hidden under his testicles.

## STANDARD OF REVIEW

[¶ 11] We outlined our standard for reviewing the district court's denial of a motion to suppress evidence in *Campbell v. State*, 2004 WY 106, ¶ 9, 97 P.3d 781, 784 (Wyo.2004):

When this Court reviews a district court's decision on a motion to suppress evidence, we do not disturb the district court's findings on factual issues unless they are clearly erroneous. *Meek v. State*, 2002 WY 1, ¶ 8, 37 P.3d 1279, ¶ 8 (Wyo. 2002); *McChesney v. State*, 988 P.2d 1071, 1074 (Wyo.1999). The evidence is viewed in the light most favorable to the district court's determination because the district court conducts the hearing on the motion to suppress and has the opportunity to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions. *Id.* "When the district court has not made specific findings of fact, we will uphold its general ruling if the ruling is supportable by any reasonable view of the evidence." *Meek*, ¶ 8 (quoting *Frederick v. State*, 981 P.2d 494, 497 (Wyo.1999)). However, the issue of law—whether an unreasonable search or seizure has occurred in violation of constitutional rights—is reviewed *de novo*. *Damato v. State*, 2003 WY 13, ¶ 7, 64 P.3d 700, ¶ 7 (Wyo.2003). *See also Meadows v. State*, 2003 WY 37, ¶ 14, 65 P.3d 33, ¶ 14 (Wyo. 2003); *Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994).

## DISCUSSION

[¶ 12] The question before the Court is actually quite limited. The appellant does not question the legality of Deputy Lauck having approached the PT Cruiser, or his having contacted the appellant to determine "what

was going on." Primarily, the appellant contends that, once he told Deputy Lauck that the couple had been engaged in sexual activity, Deputy Lauck had no reasonable suspicion of any unlawful activity that justified further detention.

[¶ 13] We disagree. To begin with, the request to see identification does not convert a consensual encounter into a seizure that invokes Fourth Amendment protection. *Rice v. State*, 2004 WY 130, ¶ 25, 100 P.3d 371, 379 (Wyo.2004); *Wilson v. State*, 874 P.2d 215, 222 (Wyo.1994). Consequently, the appellant and Gose were not "seized" until Deputy Lauck actually took their driver's licenses and walked back to his patrol vehicle to run records checks. The precise question before the Court is whether, at that moment, Deputy Lauck had a reasonable suspicion of criminal activity to allow him to detain the couple for the purpose of investigating that suspicion. We believe he did.

[¶ 14] The test is whether the State can show "the presence of specific and articulable facts and rational inferences which give rise to a reasonable suspicion that a person has committed or may be committing a crime[.]" *Custer v. State*, 2006 WY 72, ¶ 13, 135 P.3d 620, 624–25 (Wyo.2006). The facts supporting Deputy Lauck's reasonable suspicion were: (1) the particular area where the PT Cruiser was parked was known by local law enforcement officers to have a history of criminal activity, including underage drinking, drug use, vandalism, and theft from cars; (2) when he entered the pullout area, he observed a "flurry of movement" in the front seat area of the PT Cruiser; (3) when the appellant partially lowered the passenger window, Deputy Lauck immediately noticed an "old burnt smell" or "chemical smell" that he associated with drug use, but could not quite identify; (4) the appellant's car seat was reclined back, making it difficult for Deputy Lauck to see the appellant or the appellant's hands; and (5) the appellant was visibly nervous. While any one of these factors, standing alone, probably would not have created reasonable suspicion, we hold that, taken together, they did.

[¶ 15] It must also be remembered that the detention that is at issue here was very brief. From the time Deputy Lauck took the driver's licenses, to the point he returned to the PT Cruiser to talk to Gose was but a very few minutes. Gose almost immediately admitted the presence of drugs and drug paraphernalia in the car, and retrieved them for the deputy. Reasonable suspicion then became probable cause to search the PT Cruiser, and both Gose and the appellant were justifiably detained during that process. In truth, Deputy Lauck's contact with Gose and the appellant prior to Gose's admission was both brief and minimal, and we cannot say that it violated either Article 1, § 4 of the Wyoming Constitution or the Fourth Amendment to the United States Constitution.

## CONCLUSION

[¶ 16] The totality of the circumstances facing Deputy Lauck as he encountered Gose and the appellant in the pullout area gave him reasonable suspicion of criminal activity. His brief detention of the couple to investigate that suspicion was not unreasonable, and did not violate the reasonable search and seizure provision of either the State or the Federal constitution.

[¶ 17] Affirmed.