2008 WY 85

**Linda KUNSELMAN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–07–0167.

Supreme Court of Wyoming.

July 21, 2008.

Representing Appellant: Diane M. Lozano, Wyoming State Public Defender; Tina N.

Kerin, Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Paul S. Rehurek, Senior Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Linda Kunselman entered a conditional plea of no contest to a charge of felony possession of methamphetamine. She reserved the right to appeal the district court's denial of her motion to suppress the methamphetamine evidence seized during a search of her purse following a traffic stop. In this appeal, Kunselman challenges the legality of the initial stop, her detention following the stop, and the search of her purse. We affirm.

### ISSUE

[¶ 2] The issue presented for our review is:

> Trooper Wrights [sic] estimate of the speed of Linda Kunselman's pickup truck on a Wyoming highway did not meet the requirements of probable cause or reasonable suspicion necessary for search, seizure or investigatory detention and any evidence obtained as a result of such search or seizure should be suppressed.

### FACTS

[¶ 3] On September 29, 2005, Wyoming Highway Patrol Trooper Gaylen Wright was patrolling on Interstate 80 in Laramie County near the Antelope Truck Stop. He observed a pickup truck operated by Kunselman traveling on the frontage road in excess of the posted speed limit and initiated a traffic stop. As Trooper Wright approached the truck, he saw Kunselman rocking side to side inside the truck and fidgeting in her seat. Upon contacting her, the trooper noticed that Kunselman's eyes were "pinpoint-ed," her speech was extremely rapid, and she was generally jittery.

[¶ 4] Trooper Wright asked Kunselman for her driver's license, registration, and proof of insurance. Kunselman did not have a driver's license and was unable to produce a current insurance card. She did, however, provide a Colorado identification (ID) card and the vehicle's registration. After obtaining the documents, Trooper Wright returned to his patrol car. Using the information from the ID card, Trooper Wright ran a NCIC check, which indicated that Kunselman did not have a valid driver's license. The trooper proceeded to write tickets for no driver's license and no insurance, as well as warnings for speeding and a cracked windshield. As he prepared the tickets, the trooper glanced toward the truck and noticed that Kunselman had resumed rocking from side to side.

[¶ 5] When Trooper Wright finished writing the citations, he contacted Kunselman and asked her to step to the back of the truck, where he handed her the citations and returned her ID card and registration. At that point, which was approximately ten minutes into the stop, the trooper asked Kunselman if she had any questions. She replied, "No," and Trooper Wright told her, "Okay. Then we're done." Kunselman said, "okay" and then walked to the front of her truck.

[¶ 6] About ten seconds later, Trooper Wright asked Kunselman if he could ask her a few more questions, to which Kunselman replied, "Sure." Trooper Wright then asked her three times, "When was the last time you used illegal drugs?" Kunselman twice denied using illegal drugs before responding, "Well, 1985." As she responded to his questions, Trooper Wright noticed what appeared to be needle marks and scabs on Kunselman's arms. The trooper then asked her if she had any drugs in her truck. When Kunselman denied having any drugs in the truck, the trooper asked if he could search her purse. Without replying to his question, Kunselman began looking through her purse. At that point, Trooper Wright suggested they move to the back of the truck where there was more room.

[¶ 7] Trooper Wright dropped the tailgate on the truck and Kunselman started removing items from her purse. About this time, a second trooper arrived at the scene. Trooper Wright again asked her if she had any illegal drugs. This time, Kunselman responded that she had some marijuana. When Trooper Wright asked about its location, Kunselman removed a small flowered purse from inside the larger one and stated, "It's in there." Trooper Wright looked inside the purse and noticed some capsules and a plastic baggie containing a crystal-like substance. When asked about the substance, Kunselman admitted it was methamphetamine. Later testing confirmed the baggie contained approximately thirteen grams of methamphetamine.

[¶ 8] Kunselman was arrested and initially charged with two crimes: felony possession of methamphetamine and possession of methamphetamine with intent to deliver. Kunselman filed a motion to suppress the methamphetamine, claiming it was the fruit of an illegal detention under both the Fourth Amendment to the United States Constitution and Article 1, Section 4 of the Wyoming Constitution. After a hearing, the district court denied the motion. Thereafter, pursuant to a plea agreement, Kunselman pled no contest to the felony possession charge, reserving her right to appeal the district court's suppression ruling, and the State dismissed the remaining charge. The district court sentenced Kunselman to a term of confinement of two to three years, but suspended execution of that sentence in favor of three years supervised probation. This appeal followed.

## STANDARD OF REVIEW

[¶ 9] Our standard of review is well established:

When reviewing a district court's decision on a motion to suppress evidence, we defer to the court's findings on factual issues unless they are clearly erroneous. *Campbell v. State*, 2004 WY 106, ¶ 9, 97 P.3d 781, 784 (Wyo.2004). We view the evidence in the light most favorable to the district court's decision because it is in the best position to assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions. *Id.* The constitutionality of a particular search or seizure, however, is a question of law that we review *de novo*. *Id.*

*Hembree v. State*, 2006 WY 127, ¶ 7, 143 P.3d 905, 907 (Wyo.2006); *see also Marinaro v. State*, 2007 WY 123, ¶ 7, 163 P.3d 833, 835 (Wyo.2007); *Grant v. State*, 2004 WY 45, ¶ 10, 88 P.3d 1016, 1018 (Wyo.2004).

## DISCUSSION

[¶ 10] Kunselman contends that the traffic stop was neither justified at its inception nor reasonably limited in scope to the purpose of the stop, a traffic violation. The State counters that Kunselman waived her right to challenge the legality of the initial stop because she failed to present that claim in the district court in the first instance. The State also contends that Trooper Wright's drug-related questioning of Kunselman following the conclusion of the traffic stop was supported by both Kunselman's consent and the trooper's reasonable suspicion of illegal activity.

[¶ 11] We first consider Kunselman's claim that the initial traffic stop was illegal. Upon careful review of the record, we must agree with the State that Kunselman did not present this claim in the district court. We have consistently held that a guilty plea or nolo contendere plea waives appellate review of all non-jurisdictional claims. *Morgan v. State*, 2004 WY 95, ¶ 23, 95 P.3d 802, 808 (Wyo.2004); *Bailey v. State*, 12 P.3d 173, 177 (Wyo.2000); *Smith v. State*, 871 P.2d 186, 188 (Wyo.1994); *Ochoa v. State*, 848 P.2d 1359, 1361–62 (Wyo.1993); *Davila v. State*, 831 P.2d 204, 205 (Wyo. 1992). Constitutional challenges to pretrial proceedings, including claims of unlawfully obtained evidence, as in this case, fall into the category of non-jurisdictional claims which do not survive a valid guilty plea or nolo contendere plea. The only exception to the waiver rule can be found in W.R.Cr.P. 11(a)(2), which "allows a defendant to plead guilty while reserving the right to seek review on appeal of any specified pretrial motion." *Bailey*, 12 P.3d at 177. However, we

have held that a conditional plea of guilty or nolo contendere, while providing a mechanism for appellate review, does not provide *carte blanche* permission for an appellant to present any and all arguments on appeal. *Morgan,* ¶¶ 24–25, 95 P.3d at 808–09 (citing *Bailey,* 12 P.3d at 177–78); *see also Custer v. State,* 2006 WY 72, ¶¶ 10–12, 135 P.3d 620, 623–24 (Wyo.2006); *Lindsay v. State,* 2005 WY 34, ¶¶ 16–17, 19 n. 7, 108 P.3d 852, 856–57 n. 7 (Wyo.2005). Instead, an appellant may only argue those issues which were clearly brought to the attention of the district court. *Morgan,* ¶ 24, 95 P.3d at 808–09.

[¶ 12] In her motion to suppress and her argument at the suppression hearing, Kunselman focused on the scope and duration of the stop and the subsequent search of her purse. She did not argue Trooper Wright lacked sufficient cause to perform a stop for speeding nor did she contest in any manner the reasonableness of the initial traffic stop. In fact, in her motion to suppress, Kunselman acknowledged as a factual matter that Trooper Wright stopped her for exceeding the posted speed limit. Under our well-established precedent, Kunselman's conditional plea of no contest preserved only those issues raised in her suppression motion. Kunselman did not contest the legality of the initial traffic stop in the district court and, accordingly, waived her right to make that argument on appeal. *Morgan,* ¶ 25, 95 P.3d at 809. Consequently, we will not consider it.

■ [¶ 13] We now turn to Kunselman's contention that Trooper Wright exceeded the constitutionally permissible scope of the stop by asking her about the presence of illegal drugs. The problem with Kunselman's argument is that the challenged questioning occurred after her detention on the traffic violation had terminated. Trooper Wright had returned Kunselman's ID card and other documentation, given her the citations and indicated that she could leave, thus concluding the traffic stop. The propriety of any further interaction at that juncture depends on Kunselman's consent or the presence of

reasonable suspicion of criminal activity. *O'Boyle v. State,* 2005 WY 83, ¶¶ 35, 48–49, 117 P.3d 401, 412, 414–15 (Wyo.2005).

[¶ 14] The district court determined that Kunselman voluntarily consented to further questioning and that the trooper's subsequent brief questioning was reasonable under all of the circumstances. Whether Kunselman voluntarily consented to the additional questioning is a question of fact which must be determined in light of the totality of the circumstances. *Grant,* ¶ 22, 88 P.3d at 1021. Some of the factors which may be considered in assessing whether the consent was voluntary include: the way the request was phrased by the trooper, whether Kunselman knew she could refuse the request, and the presence of other coercive factors. *Marinaro,* ¶ 10, 163 P.3d at 835 (citing *O'Boyle,* ¶ 60, 117 P.3d at 418).

[¶ 15] The record discloses that: (1) the entire traffic stop was very brief, with the initial traffic detention lasting about ten minutes; (2) Kunselman remained in her vehicle while the trooper prepared the traffic citations; (3) she was not questioned concerning matters unrelated to the motor vehicle infractions; (4) Kunselman knew she was free to go at the time the request was made; (5) the trooper's conduct throughout the encounter was professional and neither threatening nor otherwise overbearing; and (6) Kunselman's consent to further questioning was unhesitant and immediate. Under the totality of the circumstances, we have no trouble concluding that Kunselman's consent was voluntary. We do not perceive Kunselman's consent as mere acquiescence to avoid resistance as condemned in *O'Boyle.* In our view, a reasonable person in Kunselman's position would have felt free to refuse the trooper's request and proceed on her way. *Marinaro,* ¶ 11, 163 P.3d at 836. Consequently, we cannot conclude that constitutional boundaries were transgressed in this instance.[1]

■ [¶ 16] As a final matter, Kunselman claims that an illegal search of her purse occurred. We disagree. In response to questioning, Kunselman admitted having

---

1. Our conclusion that Kunselman consented to the additional questioning obviates the need to address the State's contention that the trooper had sufficient reasonable suspicion of criminal activity to question her about the presence of illegal drugs.

marijuana. She then produced a small flowered purse and stated, "It's in there." By handing the purse to Trooper Wright, Kunselman gave implicit consent for the trooper to look inside. Furthermore, Kunselman's admission that the purse contained marijuana provided probable cause for the trooper to search it. *Keller v. State*, 2007 WY 170, ¶ 15, 169 P.3d 867, 870 (Wyo.2007); *Vassar v. State*, 2004 WY 125, ¶ 19, 99 P.3d 987, 995 (Wyo.2004). We conclude that the trooper's search of Kunselman's purse was constitutionally reasonable under the circumstances.

## CONCLUSION

[¶ 17] Kunselman waived her right to contest the validity of the initial traffic stop when she failed to present that issue to the district court. We hold that Kunselman voluntarily consented to further questioning after the traffic stop was completed, and that the subsequent search of her purse was proper. We, therefore, affirm the judgment and sentence of the district court.