BOOMGAARDEN, Justice.
*874 [¶1] Andre Tremel Ray entered a conditional "no contest" plea to felony possession of a controlled substance, reserving his right to appeal the district court's denial of his motion to suppress evidence. Finding no error, we affirm.
ISSUE
[¶2] Mr. Ray presents one issue for our review: "Did the district court err in denying [the] motion to suppress evidence obtained during an unreasonable search?"
FACTS
[¶3] During his patrol of I-80 near Green River, Wyoming, on May 4, 2017, Captain Brett Stokes of the Sweetwater County Sheriff's Department received a REDDI (Report Every Drunk Driver Immediately) report of a silver Dodge Charger exceeding the speed limit and passing vehicles on the far-right shoulder. Captain Stokes located the vehicle and paced it going ten mph above the posted speed limit. Deputy Chris Sutton was also in the area and stopped Mr. Ray for speeding after learning about the traffic violation his captain observed. Deputy Sutton approached Mr. Ray's vehicle from the passenger side and informed him of the reason for the stop. Deputy Sutton questioned Mr. Ray about his travel plans and driving pattern based on the REDDI report. Mr. Ray stated he was traveling from Colorado to Utah for a wedding and that he rented the car in Colorado because his was "in the shop" due to vandalism. Mr. Ray denied speeding and driving erratically. Deputy Sutton took Mr. Ray's driver's license and rental car paperwork and walked over to the passenger side of his patrol vehicle where he met with his captain. Deputy Sutton relayed the information provided by Mr. Ray and told Captain Stokes that Mr. Ray had gold teeth, a "wad of cash," a Wyoming driver's license, and a Colorado rental car. Deputy Sutton noted that Mr. Ray had no visible luggage in the back seat despite traveling to Utah for a wedding, although he acknowledged the luggage could be in the trunk. Deputy Sutton informed Captain Stokes that he didn't "smell anything" while speaking with Mr. Ray and the two discussed that a drug detection dog was too far away to get to the scene in a reasonable time.
[¶4] Meanwhile, Wyoming Highway Trooper Joseph Minick overheard a radio conversation about the stop and arrived on scene to assist out of "curiosity." Trooper Minick discussed the stop with Captain Stokes while Deputy Sutton entered his vehicle to run Mr. Ray's driver's license and issue a citation. Trooper Minick then briefly discussed the stop with Deputy Sutton through the passenger window of the patrol vehicle. Deputy Sutton informed Trooper Minick of the cash he observed, clarified the money was in Mr. Ray's wallet and that he did not see the denomination of the bills, and handed Trooper Minick Mr. Ray's driver's license for his review. On Trooper Minick's request, Deputy Sutton and Captain Stokes permitted him to question Mr. Ray while Deputy Sutton continued with the citation paperwork.
[¶5] Trooper Minick approached Mr. Ray's vehicle on the passenger side, introduced himself, and informed Mr. Ray that he did not have to answer any questions. Trooper Minick inquired about Mr. Ray's travel plans and received the same information provided to Deputy Sutton. Due to traffic noise, Trooper Minick could not hear Mr. Ray's responses and requested that he close the driver's side window. Trooper Minick inquired further about the rental car because Mr. Ray was smoking a cigarette, which Trooper Minick believed to be prohibited by the rental agreement. While talking to Mr. Ray about the rental car, Trooper Minick leaned his head into the vehicle, told Mr. Ray he smelled marijuana, and asked him to exit the vehicle. Mr. Ray complied and Trooper Minick stated he smelled the odor of burnt marijuana. Mr. Ray stated he smoked some marijuana the previous night while in Colorado, *875 and that there might be evidence of the same in an ash tray in the vehicle.
[¶6] Trooper Minick placed Mr. Ray in the back of Deputy Sutton's patrol vehicle and informed him he was in investigative detention. Deputy Sutton searched Mr. Ray's vehicle and found an ash tray with a lid. Deputy Sutton observed traces of burnt marijuana under the lid and on the inside of the ash tray, which tested presumptive positive for marijuana. Mr. Ray was placed under arrest, and, after a further search, officers discovered marijuana and cocaine in a suitcase in the trunk.
[¶7] The State charged Mr. Ray with two counts: possession of cocaine (a felony) and possession of marijuana (a misdemeanor). Mr. Ray moved to suppress evidence, arguing the officers lacked probable cause to search his vehicle because Captain Stokes did not observe any erratic driving, only speeding; that it is not unlawful to have a wad of cash or gold teeth; and, the color of Mr. Ray's skin did not provide probable cause to search his vehicle. Mr. Ray also challenged Trooper Minick's claim he smelled burnt marijuana because Deputy Sutton did not smell it and Trooper Minick did not observe anything else, such as a roach or ash, to support his suspicion Mr. Ray smoked marijuana in the rental car.
[¶8] During the suppression hearing, the State presented the testimony of Trooper Minick and Deputy Sutton, along with photographs of Mr. Ray's ash tray. On Mr. Ray's request, the district court also received into evidence the recordings from Deputy Sutton's body cam and Trooper Minick's dash cam. In closing argument, Mr. Ray's counsel expressed his concern that Trooper Minick claimed to smell marijuana only after learning Deputy Sutton did not smell anything and learning that the drug detection dog could not arrive within a reasonable time. For these reasons, Mr. Ray argued the search was pretextual and urged the court to suppress the evidence.
[¶9] The district court found the officers' testimony credible and denied the motion to suppress. The district court explained:
10. Based on the totality of the circumstances, Trooper Minnick's interaction with Defendant was not pre-textual. It occurred during the time period of the initial traffic stop while Deputy Sutton was running a check on Defendant's license and registration, and filling out a speeding citation. Defendant voluntarily answered the Trooper's questions and the scope of the questions was reasonably confined to the purpose of the initial traffic stop.
11. Although Deputy Sutton didn't smell burnt marijuana while Trooper Minnick did smell burnt marijuana, this alone does not provide a basis for suppression of the subsequent search or Defendant's subsequent statements. There are many possible explanations for this discrepancy, including differences in sensitivity to smells between individuals, changes in wind direction, the fact that Defendant's window was closed for some of Minnick's questions or the possibility that Deputy Sutton didn't lean in as far as Trooper Minnick did when questioning Defendant.
12. Moreover, Deputy Sutton's statements to Captain Stokes, or the fact that Trooper Minnick spoke with Captain Stokes and Deputy Sutton prior to speaking with Defendant, do not provide a basis for a finding that the subsequent interaction between Trooper Minnick and Defendant was pretextual, or provide a basis for suppression of the evidence or Defendant's statements. It is common practice for investigating officers to share information and for more than one officer to interact with a suspect during a traffic stop.
13. Once Trooper Minnick smelled the odor of marijuana there was reasonable articulable suspicion of suspected criminal activity to expand the scope of the stop. Thereafter, when burnt marijuana was discovered, there was sufficient probable cause to place Defendant under arrest and search the vehicle.
[¶10] Mr. Ray entered a conditional "no contest" plea to felony possession of cocaine and the State dismissed the marijuana charge pursuant to the parties' plea agreement. The district court sentenced Mr. Ray to 20 to 50 months of incarceration with three days credit for presentence confinement *876 and suspended the incarceration in favor of two years supervised probation. This appeal followed.
STANDARD OF REVIEW
[¶11] When reviewing a denial of a motion to suppress evidence, we do not disturb the factual findings of the district court unless those findings are clearly erroneous. Kunselman v. State , 2008 WY 85, ¶ 9, 188 P.3d 567, 569 (Wyo. 2008) (citations omitted). We view the evidence in the light most favorable to the district court's decision because the court conducted the hearing and had the opportunity to "assess the witnesses' credibility, weigh the evidence and make the necessary inferences, deductions and conclusions." Id. (citations omitted). Whether the search or seizure was constitutional is a question of law we review de novo. Id. (citations omitted).
DISCUSSION
[¶12] Mr. Ray contends that the drugs found during his traffic stop were discovered due to an unconstitutional search. Specifically, Mr. Ray asserts the presence of three law enforcement officers, combined with Deputy Sutton's commentary regarding his teeth, the amount of cash he carried, the deputy's concern about waiting for a drug detection dog, and the lack of corroborating evidence to support Trooper Minick's alleged smell of burnt marijuana, demonstrate improper pretextual motives, which were all unrelated to the purpose of the initial stop for speeding. Mr. Ray further asserts Trooper Minick unreasonably expanded the scope of the stop and that his interaction with Trooper Minick was not voluntary because a reasonable person would not have felt free to ignore his additional questions or the officer's request to close the window. Finally, Mr. Ray contends that an unlawful search occurred when Trooper Minick "stuck his head into [his] car" and smelled marijuana, because Trooper Minick lacked reasonable suspicion to do so.
[¶13] The State responds that the REDDI report for speeding and erratic driving, along with law enforcement observing Mr. Ray traveling ten mph over the posted speed limit, provided "probable cause" to justify the initial stop.[1] Consequently, the State contends the officers' primary motivations are irrelevant. The State further argues that Trooper Minick's questioning was lawful and reasonable because it did not prolong the traffic stop and Trooper Minick informed Mr. Ray he could refuse to answer questions. The State also argues Mr. Ray waived any issue that Trooper Minick's "sniff" constituted a search, because Mr. Ray failed to raise that issue in district court.
A. Trooper Minick's Alleged Unlawful Search
[¶14] We first consider Mr. Ray's claim that Trooper Minick conducted an unlawful search when he leaned through the passenger window of the rental car and smelled marijuana. Under W.R.Cr.P. 11(a)(2) and our well-established precedent, Mr. Ray's conditional "no contest" plea preserved only those issues raised in his suppression motion. W.R.Cr.P. 11(a)(2) ; Kunselman , ¶¶ 11-12, 188 P.3d at 569-70. W.R.Cr.P. 11(a)(2) does not "provide carte blanche permission for an appellant to present any and all arguments on appeal." Kunselman , ¶ 11, 188 P.3d at 569-70 (citations omitted). Rather, only those issues clearly brought to the attention of the district court may be argued on appeal. Id. (citation omitted).
[¶15] We found nothing in the record to support that Mr. Ray ever presented this unlawful search claim to the district court. Mr. Ray based his motion to suppress and argument at the suppression hearing on the alleged pretextual motives of the officers. No mention was made of an unlawful search due to Trooper Minick leaning into the vehicle and smelling marijuana. Mr. Ray's conditional plea of "no contest" preserved only the specific issues raised in his suppression motion. Consequently, Mr. Ray waived his right to make this new argument on appeal and we will not consider it on the merits. Pier v. State , 2018 WY 79, ¶¶ 19-20, 421 P.3d 565, 570-71 (Wyo. 2018).
*877 B. Reasonableness of the Officers' Actions
[¶16] Mr. Ray challenges the reasonableness of the officers' actions under the Fourth Amendment of the United States Constitution[2] arguing that while there may have been a valid reason for the initial traffic stop, the district court erred by determining the officers acted reasonably throughout the duration of the stop because the court overlooked several factors evidencing pretextual motives under the totality of the circumstances. Mr. Ray also contends the district court erred in concluding his interaction with Trooper Minick was voluntary, because multiple officers were present and repeatedly questioned him. The State responds that Trooper Minick's actions were permissible because Mr. Ray consented to further questioning, and because the initial stop was still in progress, it was not impermissibly expanded.
[¶17] The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. Const. amend. IV. Under the Fourth Amendment, a traffic stop is an investigatory detention that requires reasonable suspicion that a traffic violation has occurred. Allgier , ¶ 14, 358 P.3d at 1276 (citation omitted). We evaluate the reasonableness of an investigatory stop by making a dual inquiry: "(1) whether the officer's actions were justified at the inception; and (2) whether it was reasonably related in scope to the circumstances that justified the interference in the first instance." Sweets v. State , 2017 WY 22, ¶ 9, 389 P.3d 1214, 1216 (Wyo. 2017) (citations omitted).
Absent valid consent, a reasonable suspicion of other unlawful activity or reasonable suspicion that a detainee is armed, an officer may not expand an investigative detention beyond the scope of the stop, ask questions unrelated to the stop or "embark on a fishing expedition in the hope that something will turn up."
O'Boyle v. State , 2005 WY 83, ¶ 49, 117 P.3d 401, 415 (Wyo. 2005) (citation omitted). We evaluate the officer's conduct objectively, considering the totality of the circumstances. Id. (citations omitted).
[¶18] Though Mr. Ray asserts the stop was driven by pretextual motives, he does not dispute the officers had reasonable suspicion to stop his vehicle after receiving the REDDI report and observing Mr. Ray traveling ten mph over the posted speed limit. See Vogt v. State ex rel. Dep't of Transp. , 2013 WY 123, ¶ 17, 310 P.3d 899, 906 (Wyo. 2013) (citation omitted) ("Wyoming law is clear that 'a law enforcement official's personal observation of a traffic law violation provides probable cause to initiate a traffic stop.' ").[3] This reasonable suspicion was sufficient to justify the officers' actions at the inception and any subjective pretextual motivations for making the stop are irrelevant under our Fourth Amendment analysis. Damato v. State , 2003 WY 13, ¶¶ 10-12, 64 P.3d 700, 705-06 (Wyo. 2003) ; Whren v. United States , 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996) (holding that under the Fourth Amendment, an officer's subjective intent to search for drugs does not invalidate an otherwise lawful traffic stop supported by probable cause).
[¶19] We next review whether the scope of Mr. Ray's detention was reasonable. "An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." Campbell v. State , 2004 WY 106, ¶ 12, 97 P.3d 781, 784 (Wyo. 2004) (citation omitted). During a routine traffic stop, an officer may request a driver's license, proof of insurance, and vehicle registration, run a computer check, and issue a citation or warning. Id. ¶ 12, 97 P.3d at 785 (citations omitted). Inquiry into travel plans is also permitted to put the traffic violation in context. O'Boyle , ¶ 48, 117 P.3d at 414. The driver and his vehicle may only be detained for the period of time reasonably *878 necessary to complete these routine matters. Campbell , ¶ 12, 97 P.3d at 785 ; see also Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 1614, 191 L.Ed.2d 492 (2015) ("Authority for the seizure thus ends when tasks tied to the traffic infraction are-or reasonably should have been-completed.").
[¶20] The district court correctly found that when Trooper Minick began questioning Mr. Ray about his travel plans, the investigative detention for the traffic stop was ongoing as Deputy Sutton was still processing the traffic citation. Because the original purpose for the stop was not yet complete, Trooper Minick's further inquiry about Mr. Ray's travel plans and rental car agreement-questions related to the purpose of the stop-did not impermissibly extend the scope or the length of the stop. See, e.g. , O'Boyle , ¶ 48, 117 P.3d at 414 ; Rodriguez , --- U.S. ----, 135 S.Ct. at 1614-15 (noting that the Fourth Amendment tolerates unrelated investigations that do not lengthen the roadside detention).
[¶21] We also agree with the district court that Mr. Ray voluntarily consented to further questioning. In drawing this conclusion, we consider a variety of factors under the totality of the circumstances:
the demeanor of the law enforcement officer, whether the individual was told he could refuse the request, the presence of other law enforcement officers, the length of the detention and nature of the questioning before consent was given, and other coercive factors.
Latta v. State , 2009 WY 35, ¶ 12, 202 P.3d 1069, 1072 (Wyo. 2009) (citation omitted). No single factor is determinative. Grant v. State , 2004 WY 45, ¶ 22, 88 P.3d 1016, 1021 (Wyo. 2004) (citations omitted). In this case, the body and dash camera recordings show Trooper Minick approached Mr. Ray's vehicle alone from the passenger side, introduced himself, and informed Mr. Ray he did not have to answer his questions. Mr. Ray was still seated in the driver's seat of his vehicle and did not hesitate to respond to Trooper Minick's questions. Trooper Minick's conduct was professional, courteous, and non-coercive throughout the encounter. Trooper Minick's questioning was brief and not extensive. He did not inquire about controlled substances and, instead, inquired about issues related to the purpose of the stop, while waiting for Deputy Sutton to finish issuing the citation. Further, the duration of the initial stop was brief, lasting approximately eight minutes from the time Deputy Sutton approached Mr. Ray's vehicle until Trooper Minick smelled the burnt marijuana. Under these circumstances, the district court's finding that Mr. Ray's consent was voluntary was not clearly erroneous and the presence of three law enforcement officers did not render Mr. Ray's consent to further questioning involuntary.
[¶22] During his consensual conversation with Mr. Ray, Trooper Minick smelled marijuana. Thereafter, Deputy Sutton searched the front seat of Mr. Ray's car and discovered traces of marijuana in the ash tray. Deputy Sutton then placed Mr. Ray under arrest and searched the entire vehicle, leading to the discovery of drugs in the trunk. The district court concluded that Trooper Minick's smell of marijuana provided reasonable, articulable suspicion to expand the scope of the stop and that after the discovery of burnt marijuana in the ash tray, probable cause existed to place Mr. Ray under arrest and search the vehicle. We agree, but note that the smell of marijuana did more than provide a reasonable suspicion sufficient to expand the scope of the stop. The smell established probable cause to search Mr. Ray's car. See, e.g. , Dimino v. State , 2012 WY 131, ¶ 18, 286 P.3d 739, 744 (Wyo. 2012) (citations omitted) ("The distinctive odor of marijuana establishes reasonable, articulable suspicion that an individual may be engaged in violation of narcotics laws" and "satisf[ies] the more stringent 'probable cause' test".) (citations omitted); McKenney v. State , 2007 WY 129, ¶ 9, 165 P.3d 96, 98 (Wyo. 2007) (citation omitted) (explaining that odor of marijuana, "standing alone, can supply probable cause"); Rideout v. State , 2005 WY 141, ¶ 17, 122 P.3d 201, 205-06 (Wyo. 2005) (odor of burnt marijuana, standing alone, establishes probable cause); State v. Williams , 2004 WY 53, ¶ 22, 90 P.3d 85, 92, n.4 (Wyo. 2004) (probable cause justifies the search of every part of a vehicle and *879 its contents that might conceal the object of the search). Consequently, the scope of the stop was permissibly expanded after Trooper Minick smelled marijuana, which provided probable cause to search Mr. Ray's vehicle. Under the totality of the circumstances, the officers' actions were objectively reasonable, and the search did not violate Mr. Ray's Fourth Amendment rights.
[¶23] Affirmed.

We clarified in Allgier v. State , 2015 WY 137, ¶ 14, 358 P.3d 1271, 1276 (Wyo. 2015) that reasonable suspicion, not probable cause, is the correct standard used to justify a traffic stop.

Mr. Ray did not assert a claim under Article 1, Section 4 of the Wyoming Constitution as the State indicated in its brief; thus, our review is limited to federal constitutional analysis.

See supra n.1.